# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTINA HICKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:12CV2357 HEA** |
| | ) | |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ONION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.,* and her application for supplemental security income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.* For the reasons set forth below, the Court will affirm the Commissioner's denial of Plaintiff's applications.

### Facts and Background

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was 48 years old at the time of the hearing.  She did not finish high school; she completed ninth grade, and has received a GED.  The ALJ found Plaintiff had the severe impairments of: depression, pancreatitis and cannabis abuse, pursuant to 20 CFR 404.1520(c) and 416,920(c).  At the June 1, 2011 hearing, Plaintiff testified that she worked at Mr. Good's Subs preparing a little bit of this and made sandwiches.  She worked there three years.  Plaintiff also worked at J.B.Vending Company doing catering.  Plaintiff worked at Ameristar as a cook. Plaintiff was laid off of this job.  She was able to lift 50 pounds at this job. Plaintiff also had been the housekeeper for her grandmother.  Plaintiff broke her ankle when she worked at another food establishment.  She was the kitchen manager and sandwich dresser there.  In 2009, Plaintiff applied for and received unemployment. Plaintiff testified that she cannot complete simple tasks, she has to get off her leg and lay on the heating pad.  She cannot finish cooking dinner, cannot drive anywhere because it "kills" her leg.  Going up and down stairs to do laundry is a struggle. She cannot carry the laundry up and down.  She has to sit down during cleaning the house.

Plaintiff testified she takes medications for high blood pressure consistently, but it doesn't help.  Plaintiff has diabetes and controls it with insulin and oral medication.  Plaintiff smokes about four cigarettes per day.  She had lost about 100 pounds.  Because of her pancreatitis, Plaintiff was advised by her doctors not to

consume alcohol; she very rarely does so. Plaintiff takes medicine for high cholesterol, which helps. She occasionally smokes marijuana, maybe once or twice per month. Plaintiff has depression; she does go anywhere, she fights tears all the time which ends up with a headache. She hears her children hollering for her when they are not. Plaintiff takes Paxil for depression. Plaintiff sees a psychiatrist and a counselor. She cannot stand being around anyone and has been angry and screaming at her grandchildren. She has pain in her right leg, upon which she had surgery to remove a mass. Plaintiff lies down to relieve the pain, and tries not to walk around too much.

A vocational expert testified at the hearing. In response to the hypothetical question of an individual who is 46 years old, able to perform a full range of light work and can understand, remember, and carry out simple to moderately complex instructions and tasks; can respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others is casual and infrequent, should not work in setting which includes constant or regular contact with the public, should not perform work that includes more than infrequent handling of customer complaints , should not work in close proximity to alcohol or controlled substances, the VE testified Plaintiff could not do her former jobs, but there were other jobs available. The vocational expert testified that the jobs of a small parts assembler, plastic products inspector and hand packager. Given another

hypothetical changing to a full range of sedentary work with the same

psychological restrictions, the VE testified that the same general type assembly

type job only at the sedentary level would be available; optical goods processor,

packaging and sealing of medical supplies

Plaintiff's application for social security and supplemental security income

benefits under Titles II, 42 U.S.C. §§ 401, *et seq*. And XVI of the Act, 42 U.S.C. §

1381, *et seq.* was denied on April 23, 2010.  Plaintiff appeared and testified before

an ALJ on June 1, 2011.  On July 29, 2011, the ALJ issued an unfavorable

decision.  On October 23, 2012, the Appeals Council denied Plaintiff's request for

review of the ALJ's decision.  Thus, the decision of the ALJ stands as the final

decision of the Commissioner.

## Standard For Determining Disability

The Social Security Act defines as disabled a person who is "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738

(8th Cir.2010).  The impairment must be "of such severity that [the claimant] is not

only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists

in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process).  At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611.  At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.  At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in substantial gainful activity since June 12, 2009, the alleged onset date.  At Step Two, the ALJ found that Plaintiff had the following severe impairments: depression, pancreatitis and cannabis abuse.  Plaintiff's other impairments were not severe because they did not more than minimally limit her ability to perform work related activities, alone or in combination.  The ALJ considered these impairments in assessing Plaintiff's RFC.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments in the listings.

Prior to Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she retains the capacity to understand, remember, and carry out simple to moderately complex instructions and tasks; responds appropriately to supervisors and coworkers in a task-oriented setting where contact with other is casual and infrequent.  Plaintiff should not work in a setting which includes constant/regular contact with handling of customer complaints, and she should not work in close proximity to alcohol and other controlled substances.  At Step Four, the ALJ determined that Plaintiff was not capable of performing past relevant work as a

cook, caterer kitchen manager, delicatessen manager or worker or fast food worker.  At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  The ALJ concluded that Plaintiff had not been under a disability as defined in the Act.

## Standard For Judicial Review

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)).  In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision.  *Id*.  However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Id*. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent

positions from the evidence and one of those positions represents the AL's findings, the court must affirm the AL''s decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In his appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) the decision of the ALJ failed to articulate a legally sufficient rationale for its conclusions regarding Residual Functional Capacity under the standards contained in *Singh* and *Lauer*; (2) the hypothetical question to the vocational expert does not capture the concrete consequences of Plaintiff's impairment and therefore, the response of the vocational expert testimony does not represent substantial evidence upon which the decision may rest.

## RFC

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding his symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue,* 596

F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security

Ruling (SSR) 96–8p.  An ALJ may discredit a claimant's subjective allegations of

disabling symptoms to the extent they are inconsistent with the overall record as a

whole, including: the objective medical evidence and medical opinion evidence;

the claimant's daily activities; the duration, frequency, and intensity of pain;

dosage, effectiveness, and side effects of medications and medical treatment; and

the claimant's self-imposed restrictions. *See Polaski v. Heckler,* 739 F.2d 1320,

1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

When analyzing a claimant's subjective complaints of pain, the ALJ must

consider the five factors from *Polaski v. Heckler*: (1) the claimant's daily activities;

(2) the duration, frequency, and intensity of the pain; (3) precipitating and

aggravating factors; (4) dosage, effectiveness and side effects of medication; and

(5) functional restrictions. See 739 F.2d 1320, 1322 (8th Cir.1984); see also 20

C.F.R. §§ 404.1529, 416.929.  "The ALJ [is] not required to discuss methodically

each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those

considerations before discounting [the claimant's] subjective complaints."  *Lowe v.

Apfel*, 226 F.3d 969, 972 (8th Cir.2000). "Because the ALJ [is] in a better position

to evaluate credibility, we defer to his credibility determinations as long as they

[are] supported by good reasons and substantial evidence." *Cox v. Barnhart*, 471

F.3d 902, 907 (8th Cir.2006).

In *Lauer*, the Eighth Circuit determined the ALJ failed to cite some medical evidence in making his RFC determination. 245 F.3d at 704. In that case, the ALJ rejected the treating physicians' opinions and instead relied solely upon the opinion of a prior treating psychiatrist in determining the claimant's RFC. *Id.* However, the prior treating psychiatrist was never asked to express an opinion about the claimant's ability to participate in work-related activities. *Id.* at 705. Therefore, the prior psychiatrist's opinion was not considered some medical evidence because it did not relate to the claimant's ability to participate in work-related activities. *Id.* Thus, the ALJ erred in basing his RFC determination on this evidence. *Id.*

*Lauer* does not apply to this case. First, in *Lauer* the non-examining physician's opinion was not considered some medical evidence because the physician was never asked to comment on the claimant's ability to participate in work-related activities. Here, the ALJ did rely on some medical evidence in determining Plaintiff's RFC. The ALJ in making his RFC determination considered the entire record, including Plaintiff's medical records, Plaintiff's testimony, and the conflicts between the two, and the medical opinions of record. Plaintiff's medical records support the ALJ's RFC determination that Plaintiff could perform unskilled work. For instance, the ALJ noted Plaintiff was feeling fine with a low dose of Celexa in September 2008. Plaintiff received GAF scores between and 50-55, even with cannabis abuse continuing to be a factor in

Plaintiff's mental status evaluation in May 2011. Plaintiff had significant improvements in functioning (from 45-50 GAF to 50-55 GAF in two weeks, and An ALJ may consider GAF scores in determining a claimant's RFC, however, such scores are not considered dispositive. *Halverson v. Astrue*, 600 F.3d 922, 930–31 (8th Cir. 2010). Additionally, the ALJ noted that Plaintiff failed to show up for scheduled appointments on June 13 and June 20, 2011.

Though the ALJ discredited much of Plaintiff's complaints of the severity of her mental impairments, the ALJ's RFC determination reflects some of those impairments. For instance, Plaintiff's RFC is limited to only occasional contact with the public, therefore incorporating Plaintiff's alleged inability to work with other people. Additionally, the ALJ's limitation to light work with limitations reflects Plaintiff's mental impairment complaints. The ALJ also relied upon the scant mental health treatment. Additionally, it should be noted that Plaintiff's claim of lack of sufficient funds to purchase medications is belied by the record which establishes that Plaintiff was counseled on how to obtain medication for four dollars per month and her continued use of cigarettes.

The ALJ's reliance on Plaintiff's treatment notes, her own testimony, and Plaintiff's scant mental health records, in addition to her failure to seek treatment for her leg pain and the fact that no medical provided ever indicated that Plaintiff

was disabled and unable to perform any kind of work of constitutes substantial evidence supporting the ALJ's RFC determination.

The ALJ discussed his reasons for his conclusions. Because the ALJ properly applied Polaski and provided valid reasons for discounting Plaintiff's testimony, the Court finds the ALJ did not err in discounting the most severe subjective complaints of pain. *McDade v. Astrue,* 720 F.3d 994, 999 (8th Cir 2013)("See *Perks*, 687 F.3d at 1093 (affirming ALJ's decision to discount claimant's reports of disabling back pain where claimant's normal activities included 'meal preparation, mowing his yard on a riding mower, shopping for food, and maintaining the family's finances.')" *Id.*

Furthermore, the ALJ properly considered the medical evidence. *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000).

**Hypothetical question**

Plaintiff's second challenge to the ALJ's decision is that a response to a hypothetical question that does not capture the concrete consequences of Plaintiff's impairment is not considered substantial evidence and therefore, in this matter, the vocational expert testimony cannot be considered substantial evidence.

Plaintiff argues that because the counselor's medical opinion that Plaintiff would miss more than four days of work per month would be at least 20% of the work month, and thus the VE's testimony that Plaintiff is incapable of working.

As Defendant correctly argues, the ALJ is only bound to include in the hypothetical question those impairments and limitations found to be credible. The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barhart*, 465 F.3d 881, 889 (8th Cir. 2006)).

Here, as noted above, the ALJ relied upon substantial evidence along with some medical evidence in determining Plaintiff's RFC. The hypothetical was then based on that RFC, and was therefore proper and included the appropriate limitations. The ALJ was not required to include limitations that he did not find supported by the evidence, and therefore his rejection of the question posed by Plaintiff's counsel was not error.

Based on the entire record, including the medical evidence and the medical opinions, the ALJ only included those limitations found to be credible. *Gragg v. Astrue*, 615 F.3d 932, 940 (8th Cir. 2010) ("The hypothetical question posed by the ALJ in this case incorporated each of the physical, mental, and cognitive impairments that the ALJ found to be credible, and excluded those impairments that were discredited or that were not supported by the evidence presented.") Because of the lack of credible evidence of those limitations of which Plaintiff argues, the ALJ was not required to incorporate them into the hypothetical question

for the vocational expert. The ALJ properly included for consideration only the limitations which were supported by the record.

## Conclusion

After careful examination of the record, the Court finds the Commissioner's determination is supported by substantial evidence on the record as a whole, and therefore, the decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 19th  day of February, 2014.


_____
**HENRY EDWARD AUTREY**
**UNITED STATES DISTRICT JUDGE**